**SCARPONE STAIANO & SAVAGE LLC**
 By:    Patricia A. Staiano (PS-8954)
        James A. Scarpone (JS-5403)
744 Broad Street, Suite 1901
Newark, New Jersey 07102
(973) 648-0065
**Attorneys for Benjamin A. Stanziale, Jr., Plaintiff/Chapter 7 Trustee**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

-----------------------------------------------------------x
                                                           :
**In re:**                                                 : **Hon. Morris Stern**
                                                           :
**PITTRA G.B. INTERNATIONAL, INC.,**                       : **Case No. 06-10889 (MS)**
                                                           :
           **Debtor.**                                     : **Chapter 7**
-----------------------------------------------------------:
                                                           : **Adv. Pro. No. _____**
**BENJAMIN A. STANZIALE, JR., CHAPTER**                    :
**7 TRUSTEE FOR PITTRA G.B.**                              :
**INTERNATIONAL, INC.,**                                   : **VERIFIED COMPLAINT**
                                                           :
           **Plaintiff,**                                  :
     **v.**                                                :
                                                           :
**ARTHUR KUPPERMAN, PAULETTE**                             :
**KRELMAN, E. ROSS BROWNE, SR.,**                          :
**ESCROW AND CLOSING SERVICES LTD.,**                      :
**PGB INTERNATIONAL, LLC and**                             :
**WACHOVIA BANK, N.A.,**                                   :
                                                           :
           **Defendants.**                                 :
-----------------------------------------------------------x

Plaintiff, Benjamin A. Stanziale, Jr., Chapter 7 Trustee for PITTRA G.B.

International, Inc., by and through his attorneys, Scarpone Staiano & Savage LLC, by way of

complaint against defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr.,

Escrow and Closing Services Ltd., PGB International, LLC and Wachovia Bank, N.A., states

as follows:

## JURISDICTION, VENUE AND PARTIES

1. This Complaint seeks the determination of the ownership of certain assets which the Trustee has reason to believe are actually assets of the Debtor's estate. The Complaint seeks the immediate prohibition and restraint of the transfer of these assets by defendants. To the extent these assets are determined to be property of the Debtor's estate, the Trustee seeks turnover of such assets.

2. On February 9, 2006, debtor PITTRA G.B. International, Inc. ("Debtor") filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

3. On February 10, 2006, plaintiff Benjamin A. Stanziale, Jr. ("Plaintiff" or "Trustee") was appointed as Chapter 7 Trustee of the Debtor by the United States Trustee and is duly acting in that capacity.

4. Upon information and belief, defendant Arthur Kupperman ("Kupperman") is a New Jersey resident, with an address at 200 Mount Horeb Road, Warren, New Jersey 07059.

5. Upon information and belief, defendant Kupperman has also used an address of 23 Hampshire Drive, Mendham, New Jersey 07945.

6. Upon information and belief, defendant Paulette Krelman ("Krelman") is a New Jersey resident, with an address at 23 Hampshire Drive, Mendham, New Jersey 07945.

7. Upon information and belief, defendant E. Ross Browne, Sr. ("Browne") is a New Jersey resident, with an address at 27 Waterford Drive, Montville, New Jersey 07045.

8. Upon information and belief, defendants Kupperman and Krelman are husband and wife.

9. Upon information and belief, defendant Wachovia Bank, N.A. ("Wachovia") is a nationwide bank entity whose registered agent is Prentice-Hall, having an address at 830 Bear Tavern Road, West Trenton, New Jersey 08628.

10. Documents provided to the Trustee have identified defendant Escrow and Closing Services Ltd. as the entity responsible for closing a sale and disbursing $10 million in proceeds of that sale which the Trustee believes involves assets of the estate. Notwithstanding the Trustee's best efforts, he has been unable to locate Escrow and Closing Services Ltd., and his only information is a letterhead listing a post office address at P.O. Box 8745, Newark, New Jersey 07101-8745.

11. Debtor was a New Jersey corporation with its principal place of business located at 6 South Street, Morristown, New Jersey 07960.

12. Defendant Kupperman was the president and a director of Debtor.

13. Upon information and belief, defendants Krelman and Browne were the shareholders of Debtor.

14. Upon information and belief, defendant PGB International, LLC ("PGB International") is a New Jersey Limited Liability Company with a principal place of business located at 6 South Street, Morristown, New Jersey, 07960.

15. Defendants Kupperman, Krelman and Browne are members of PGB International and Kupperman also serves as PGB International's managing member.

16. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(b).

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

18. This matter arises under 11 U.S.C. §§ 544(b), 550 and 105 and the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20, *et seq*. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

**Transfer of Assets from Debtor to PGB International**

19. Debtor was in the business of purchasing, importing, marketing and distributing food ingredients including fruit juice concentrates, fruit pulps and purees, essential oils and essences, frozen fruits, dehydrated fruits, and tomato paste.

20. In December 2002, Debtor's liabilities included a $151,591 trade debt to a supplier, Empresas Lourdes S.A. In the same month, another supplier, Yantai North Andre Juice Co. ("Yantai"), obtained a $1,169,954 judgment against Debtor in the District Court for the District of New Jersey. Debtor also owed Merrill Lynch Business Financial Services Inc. ("MLBFS") more than $2.2 million on a line of credit secured by Debtor's assets, including its customer list.

21. On information and belief, to avoid Debtor's liabilities, Kupperman, Krelman and Browne formed PGB International on April 30, 2003 to acquire Debtor's assets and carry on Debtor's business.

22. On or about June 5, 2003, by way of Unanimous Written Consent of the Members in Lieu of Meeting, PGB International agreed to enter into an asset purchase agreement with Debtor, which was executed by Kupperman, Krelman and Browne. In the

document, the members also authorized Krelman to execute any and all documents on behalf of PGB International.

23. On or about June 5, 2003, Debtor's Board of Directors issued a Consent of Board of Directors to Sale executed by Krelman and Kupperman, which authorized Kupperman to execute the Asset Purchase Agreement on behalf of Debtor and to execute all other related documents.

24. On or about June 5, 2003, Debtor and PGB International entered into an Asset Purchase Agreement. The Asset Purchase Agreement is executed on behalf of PGB International by Krelman and on behalf of the Debtor by Krelman's husband, Kupperman.

25. The Asset Purchase Agreement provided that Debtor would sell, and PGB International would purchase, various business assets of the Debtor including all intangibles, customer contracts and agreements, all furniture and equipment, and operating leases.

26. The Asset Purchase Agreement provided that PGB International would <u>not</u> assume any liabilities or obligations of Debtor whatsoever, other than those specifically associated with the customer contracts purchased by PGB International that arose after the closing date of the transaction.

27. The Asset Purchase Agreement provided that the purchase price for the various subject business assets was $310,000, payable by a $10,000 payment at closing, and the balance to be paid according to a promissory note annexed to the Asset Purchase Agreement.

28. In accordance with the terms of the Asset Purchase Agreement, on or about June 5, 2003, PGB International executed a Promissory Note wherein it agreed to pay $75,000 to the Debtor within ten (10) days of the closing date, and the balance within thirty (30) days thereof. The Promissory Note was executed by Krelman on behalf of PGB International.

29. On information and belief, the asset sale from Debtor to PGB International closed on or about June 8, 2003.

30. On information and belief, PGB International never transferred payment for Debtor's assets in accordance with the terms of the Asset Purchase Agreement or the Promissory Note.

31. On information and belief, Debtor's secured lender MLBFS had no notice of the sale and, as such, never released its lien on the transferred assets.

32. While Kupperman engineered Debtor's asset sale, he also negotiated a "Strategic Alliance Agreement" with Mitsui & Co., Ltd and Mitsui & Co. (U.S.A.), Inc. (referred to collectively herein as "Mitsui) whereby PGB International would market, sell and distribute food ingredients including juice concentrates and fruit pulps on behalf of Mitsui in Asia and North America.

33. Under the terms of the Strategic Alliance Agreement, PGB International transferred ownership of Debtor's customer list to Mitsui.

34. On information and belief, Debtor's secured lender MLBFS had no notice of PGB International's transfer of Debtor's customer list to Mitsui and, as such, MLBFS never released its lien on this asset.

35. Following the asset transfer (and prior to Debtor's filing its voluntary petition under Chapter 7 of the United States Bankruptcy Code) defendants Kupperman, Krelman and Browne continued the business with virtually no change other than the slight change in name and the abandonment of the Debtor's unsecured creditors.

36. Upon information and belief, PGB International now carries on the same business as the Debtor and operates to serve Debtor's former customers.

37. Upon information and belief, customers of PGB International continue to list Debtor as the purchasing party.

38. Upon information and belief, PGB International uses the same address as that Debtor used, 6 South Street, Morristown, New Jersey.

39. Upon information and belief, at all times relevant hereto, Browne, Kupperman and Krelman were the officers, directors and/or shareholders of both the Debtor and PGB International.

40. PGB International continues to operate under Debtor's website, www.pittra.com, which claims that PGB International was founded in the 1980's and:

> has developed an outstanding expertise in the purchasing, marketing, and distribution of high quality industrial food ingredients. We handle such items as fruit juice concentrates, fruit pulps and purees, essential oils and essences, frozen fruits, dehydrated fruits, tomato paste, etc.

41. In the course of the Trustee's investigation of the assets and financial affairs of the Debtor, the Trustee caused a subpoena to be issued to Debtor's secured lender, MLBFS.

42. MLBFS provided documents in compliance with the Trustee's subpoena, including, an Independent Auditors' Report purportedly issued by Amper, Politziner & Mattia, P.A., Certified Public Accountants and Consultants ("Amper Politziner") dated December 22, 2004, with accompanying balance sheets and related statements of income and retained earnings and cash flows (the "2004 Report") (See Exhibit "B" to the Certification of Benjamin A. Stanziale, Jr. submitted in support of this Verified Complaint (the "Stanziale Cert.")).

43. The 2004 Report states total assets of the Debtor of $8,812,942 and total liabilities of $6,513,991.

44. MLBFS also produced a document which purports to be an Independent Auditors' Report dated December 16, 2005 with attached balance sheet, related statements of income and retained earnings and cash flows issued by Amper Politziner (the "2005 Report"). (See Exhibit "C" to the Stanziale Cert.).

45. The 2005 Report states total assets of the Debtor of $11,119,325 and total liabilities of $8,064,931.

46. Note 5 to the 2005 Report also reflects that the Debtor maintained a line of credit of $3,750,000 and on the Balance Sheet, the credit line payable is listed at $3,748,948.

47. MLBFS also produced a Balance Sheet dated March 31, 2006 for the Debtor (the "3/31/06 Balance Sheet"). (See Exhibit "D" to the Stanziale Cert.).

48. The 3/31/06 Balance Sheet is dated post-petition. Neither the Trustee nor his counsel provided the 3/31/06 Balance Sheet to MLBFS, nor had they ever seen it prior to the MLBFS document production.

49. MLBFS has asserted to the Trustee that it is owed approximately $4.1 million by the Debtor and Kupperman, whom MLBFS advises signed a personal guaranty.

50. MLBFS has also asserted that it was not provided with notice of Debtor's bankruptcy filing.

51. The Debtor's Voluntary Petition, Schedule and Statement of Financial Affairs do not list MLBFS as a creditor, nor do they list the line of credit as a debt.

52. The only mention of MLBFS is in item 3.b. on the Statement of Financial Affairs showing a transfer of $293,104.34 to MLBFS with an amount still owing of "$0.00".

53. Despite the approximate $4.1 million indebtedness, the Debtor did not list MLBFS as a creditor on its Voluntary Petition.

54. MLBFS also produced to the Trustee a letter dated September 7, 2006 on the letterhead of "Escrow and Closing Services Ltd." and signed by a Robert A. Cooper. Attached to the letter is a two-page schedule of disbursements to be made from escrow funds "on deposit in our account" (the "Disbursement Schedule"). Both the letter and Disbursement Schedule are attached to the Stanziale Cert. as Exhibit "A".

55. The Disbursement Schedule shows that Wachovia is holding $10 million in Account 1003784550891, Sub-account control 4312894-98.

56.  The Disbursement Schedule also shows disbursements of the $10 million going to defendants PGB International, Kupperman and various United States and offshore entities.

57.  These purported disbursements also include a disbursement of $3,785,350.90 to pay off a MLBFS credit line and a disbursement of $151,020.92 to payoff a MLBFS term loan.

58.  MLBFS has advised that to date, its credit line and term loan have not been paid. As such, the Trustee believes that Wachovia still holds some or all of the $10 million.

59.  Under the circumstances set forth above including the 2003 asset sale and the audited financial statements the Trustee obtained from MLBFS, there is good cause to believe that some or all of the $10 million being held by Wachovia is property of the Debtor's estate.

60.  If the $10 million is allowed to be disbursed pursuant to the terms of the Disbursement Schedule, Debtor's estate will be irreparably harmed since much of the money will be transferred out of the country and it may then be impossible for the Trustee to recover the funds.

### FIRST COUNT
**(Fraudulent Transfer)**

61.  The Trustee incorporates by reference all of the allegations set forth in the above paragraphs as if fully set forth at length herein.

62. While owing monies to creditors, Debtor, by and through defendants Kupperman, Krelman and Browne, as its owners, officers, directors and/or shareholders, transferred Debtor's interest in substantially all of its assets to PGB International.

63. Defendants Kupperman, Krelman and Browne are insiders as that term is defined by 11 U.S.C. § 101(31)(B) and N.J.S.A. 25:2-27.

64. Debtor received less than a reasonably equivalent value in exchange for the transfers of Debtor's assets to PGB International in violation of N.J.S.A. 25:2-25(b) and 25:2-27(a).

65. The various actions of the defendants, including all of the alleged transfers, occurred with the intent to hinder, delay and prevent payment by Debtor for obligations owed to creditors and in violation of N.J.S.A. 25:2-25(a) and 25:2-27.

66. The foregoing transfers were also fraudulent under N.J.S.A. 25:2-27 because Debtor was insolvent within the meaning of N.J.S.A. 25:2-23 at the time the transfer was made, in light of Debtor's then-existing debts.

**WHEREFORE,** the Trustee demands judgment against defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. and PGB International, LLC, jointly and severally as follows:

A. Entering judgment for the value of all assets transferred from Debtor to or for the benefit of PGB International, and the proceeds thereof pursuant to N.J.S.A. 25:2-30(b) and 11 U.S.C. §550;

B. Pre-judgment attachment of all assets held by all defendants of a value sufficient to satisfy claims of creditors in accordance with N.J.S.A. 25:2-29;

C. The granting of an injunction against further disposition of any assets from, or by and between, any of the defendants with respect to any asset

        they are holding or of other property pursuant to N.J.S.A. 25: 2-29(a)(3)(a);

D.     Avoidance of all transfers made and obligations incurred, pursuant to N.J.S.A. 25:2-29(a)(1), to the extent necessary to satisfy all claims against Debtor's estate;

E.     Piercing of the corporate veil of defendant PGB International to reach the assets of and/or proceeds Kupperman, Krelman and Browne invested in PGB International that have been transferred to others;

F.     The placing of a constructive trust and/or equitable lien on and against all assets owned by any of the defendants for the purpose of recovering any assets fraudulently transferred;

G.     Punitive damages against all defendants;

H.     Pre-judgment and post-judgment interest; and

I.     Such other and further relief as the Court may deem just and proper, including costs and attorney's fees.

## SECOND COUNT
### (Civil Conspiracy)

67.     The Trustee incorporates by reference all of the allegations set forth in the above paragraphs as if more fully set forth at length herein.

68.     The defendants are a combination of two or more persons who entered into a real agreement or confederation with a common design to commit one or more fraudulent transfers and for other unlawful purposes, making every member of the conspiracy equally and vicariously liable for the damages proximately caused by their acts in furtherance of the conspiracy.

69.     Upon information and belief, defendants' conspiracy was actuated by actual malice or accompanied by a wanton and willful disregard of Debtor's creditors who

foreseeably might be harmed by those acts or omissions, making defendants also liable for punitive damages.

    70.    The foregoing actions of the defendants have caused substantial damages to Debtor's creditors and estate.

**WHEREFORE**, the Trustee demands judgment against defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. and PGB International, LLC, jointly and severally as follows:

    A.    Entering judgment for the value of all assets transferred from Debtor to or for the benefit of PGB International, and the proceeds thereof pursuant to N.J.S.A. 25:2-30(b) and 11 U.S.C. §550;

    B.    Pre-judgment attachment of all assets held by all defendants of a value sufficient to satisfy claims of creditors in accordance with N.J.S.A. 25:2-29(a)(2);

    C.    The granting of an injunction against further disposition of any assets from, or by and between, any of the defendants with respect to any asset they are holding or of other property pursuant to N.J.S.A. 25: 2-29(a)(3)(a);

    D.    Avoidance of all transfers made and obligations incurred, pursuant to N.J.S.A. 25:2-29(a)(1), to the extent necessary to satisfy all claims against Debtor's estate;

    E.    Piercing of the corporate veil of defendant PGB International to reach the assets of and/or proceeds Kupperman, Krelman and Browne invested in PGB International that have been transferred to others;

    F.    The placing of a constructive trust and/or equitable lien on and against all assets owned by any of the defendants for the purpose of recovering any assets fraudulently transferred;

    G.    Punitive damages against all defendants;

    H.    Pre-judgment and post-judgment interest; and

    I.    Such other and further relief as the Court may deem just and proper, including costs and attorney's fees.

## THIRD COUNT
### (Conversion)

71. The Trustee incorporates by reference all of the allegations set forth in the all prior paragraphs as if more fully set forth at length herein.

72. The transfer of Debtor's assets described above to PGB International constituted conversion of the Debtor's assets since the defendants improperly exercised control over the assets to the exclusion of Debtor's rights to the assets and to the detriment of the Debtor's creditors.

**WHEREFORE**, the Trustee demands judgment against defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. and PGB International, LLC, awarding Trustee damages in an amount to be determined at trial together with punitive damages, pre-judgment interest, post-judgment interest, attorneys fees, costs and such other and further relief as the Court deems equitable and just.

## FOURTH COUNT
### (Breach of Fiduciary Duty)

73. The Trustee incorporates by reference all of the allegations set forth in the all prior paragraphs as if more fully set forth at length herein.

74. Defendants, through their ownership and/or control of Debtor owed Debtor and its creditors a fiduciary duty.

75. The acts and omissions of the defendants breached their fiduciary duties to Debtor and its creditors and Debtor and its creditors suffered damages as a direct and proximate result.

**WHEREFORE**, the Trustee demands judgment against defendants Arthur Kupperman, Paulette Krelman, E. Ross Browne, Sr. and PGB International, LLC, awarding damages in an amount to be determined at trial, together with pre-judgment, post-judgment interest, attorneys fees, costs and such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
**(Turnover)**

76. The Trustee incorporates by reference all of the allegations set forth in the all prior paragraphs as if more fully set forth at length herein.

77. Money held by Wachovia in Account No. 1003784550891 and its sub-account no. 4312894-98, and any accounts or sub-accounts held in the name of or for the benefit of the Debtor and/or PGB International is, in whole or in part, property of the Debtor's estate.

78. The Trustee has cause to believe that there is a clear and present danger that these funds can and will be transferred by Wachovia to some or all of the defendants and to various off-shore entities, putting possible estate assets out of the reach of the Trustee and creditors.

**WHEREFORE**, the Trustee demands judgment against defendants Wachovia Bank, N.A. and Escrow and Closing Services Ltd. restraining Wachovia and Escrow and Closing Services Ltd. from transferring the funds contained in account no. 1003784550891 and Sub-account no. 4312894-98 and any accounts or sub-accounts held in the name of or for the benefit of the Debtor and/or PGB International; and for turnover to the Trustee of all funds in the account found to be property of the estate.

        SCARPONE STAIANO & SAVAGE LLC
        Attorneys for Benjamin A. Stanziale, Jr.,
        Plaintiff/Chapter 7 Trustee


        By: /s/ Patricia A. Staiano
           Patricia A. Staiano (PS-8954)
           James A. Scarpone (JS-5304)

Dated:   September 20, 2006

### **VERIFICATION OF BENJAMIN A. STANZIALE, JR.**

BENJAMIN A. STANZIALE, JR., of full age, certifies as follows:

1. I am a the duly appointed Chapter 7 Trustee of Debtor PITTRA GB International, Inc. and I am the Plaintiff in this adversary proceeding.

2. I certify that the allegations of set forth in this complaint are true based on my personal knowledge and based on the information and belief that I have obtained through my investigation into Debtor's financial affairs and the assets of the estate.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                   /s/ Benjamin A. Stanziale
                                                   Benjamin A. Stanziale, Jr.

Dated: September 20, 2006